PER CURIAM.
Jose Stern, defendant below, appeals a final judgment in favor of Amnon Gad, Personal Representative of the Estate of Juan Francisco Vargas. We reverse.
Stern and, until his demise, Vargas, were both Colombian emerald dealers who transacted business in that country and in other locations throughout the world. Stern and the decedent did business with each other until decedent’s demise in 1985. Although the two ordinarily transacted business in Colombian pesos, in 1983 they agreed to transact certain emerald business in dollars. Payment for the dollar transactions, which we will refer to as the Miami account or the Miami dollar transactions, were to be made from an account at the Bank of Miami. These transactions began in July, 1983 and continued for a period of months thereafter.
In 1985 Vargas died. Gad, a resident of New York and also a gem dealer, was appointed personal representative. Decedent’s widow found five undated checks among the decedent’s effects. The checks were for an aggregate amount of $805,000. Each was signed by an authorized signatory on the Bank of Miami account, either Stern or his son-in-law David Haim, a resident of Miami. Acting on instructions of the accountant or attorney for the estate, the personal representative dated and deposited the checks in July and August, 1986. The checks were returned for insufficient funds.
The personal representative brought suit in this jurisdiction for payment of the five checks. Both in the complaint, and at trial, the personal representative took the position that the estate was entitled to be paid on the checks. The personal representative disclaimed any knowledge whatsoever of the circumstances under which the checks were given to the decedent. The personal representative also disclaimed any knowledge of the decedent’s business affairs. He indicated that he did not have any of the decedent’s books or records of account, and had made no inquiry to attempt to locate them. The personal representative was the sole witness who testified on behalf of the estate.
Stern answered and counterclaimed for return of the checks. The defense asserted that there was a balance due to the estate on the Miami account but that it was only $60,000, not $805,000. The defense contended that the checks had been given to the decedent as security for purchases of emeralds, with the specific understanding that the checks would not be dated and deposited without the consent of Stern. According to the defense, the account had been paid down to the $60,000 level by other checks, and the undated checks were to have been returned to Stern, or destroyed. The defense contended that to grant recovery on the checks would result in double payment for the same obligation, except for the $60,000 Stern conceded that he owed.
After a bench trial, the court entered judgment in favor of the estate and Stern has appealed. Stern’s points on appeal have merit.
*260 We first address the trial court’s exclusion of a ledger sheet recording the Miami dollar transactions. This ledger sheet had been maintained by Haim, Stern’s son-in-law, to record the purchases from, and payments to, decedent. Haim was himself a gem dealer in Miami, but had no financial participation in Stern’s transactions with Vargas. Because Haim resided in Miami, Stern asked him to be an authorized signatory on the Bank of Miami account and to keep track of the Miami dollar transactions. Haim maintained the ledger sheet as a contemporaneous record, beginning with the initial dollar transaction in July, 1983 and continuing through the final entry in June of 1984.
At trial, Stern moved to introduce the ledger sheet in evidence under the business records exception to the hearsay rule. See § 90.803(6)-(7), Fla.Stat. (1989). The personal representative objected that the ledger sheet did not qualify as a business record and the trial court sustained the objection. In so doing, the court erred.
Despite the personal representative’s conclusory assertions to the contrary, the ledger was maintained “in the course of a regularly conducted business activity,” id. § 90.803(6), that is, a course of trading between Stern and the decedent using the Miami dollar account. Haim testified that the entries in the account were regularly made and were intended to accurately reflect the outstanding balance in the account at any particular point in time. Haim also testified that the data contained on the ledger came from information provided by Stern and/or Vargas, and when Haim wrote checks on the account, those entries were of Haim’s personal knowledge. Finally, Haim testified that he, Stern, and Vargas met in February of 1984 and agreed that the outstanding balance shown on the ledger at that time was accurate. The ledger sheet qualified as a business record.
The personal representative argues that the document did not satisfy the statutory test because Haim did not make a regular practice of keeping this kind of ledger sheet to record emerald transactions in Haim ⅛ gem business. That argument is entirely misplaced. Haim had his own independent gem business in Miami. He testified that he used a different record-keeping system for purposes of his own business. However, this particular ledger sheet was maintained at the specific request of, and as agent for, Stern — as a part of Stern’s business. Stern could have just as easily hired an independent bookkeeper or accountant in Miami to maintain these particular trading records. Abundant evidence shows that the statutory test was satisfied and the evidence should have been admitted. See Federated Dep’t Stores, Inc. v. Antigo Indus., Inc., 297 So.2d 591, 592 (Fla. 3d DCA 1974).[1]
Stern next contends that there was no substantial competent evidence supporting the trial court’s judgment, and that it must be reversed. We agree.
Although the personal representative resisted the introduction of the ledger sheet, he did not dispute that there had been a number of dollar transactions between Stern and the decedent over the relevant period of time. The personal representative was knowledgeable of the emerald business, and agreed that practices for extending credit between wholesale dealers were informal. The personal representative testified that he purchased some three to four million dollars of emeralds in Colombia each year, on which he could obtain short term credit for two to three weeks by *261 simply signing a receipt but giving no other security. For longer term credit, other arrangements would be needed. Security and lending arrangements are, to the outside observer, informal because there is a relatively small number of dealers and reputations are known within the industry. The personal representative testified that he had known Stern for twenty-five years and would be willing to do business with him.
The personal representative testified that he did not use checks as a means of security in his own transactions. He indicated, however, that he had no knowledge of the course of dealing between the decedent and Stern.
As previously indicated, the defense witnesses testified that Stern gave the decedent undated checks as security for emerald purchases. These were not to be deposited without authorization by Stern. Sometimes Stern would make payment on the account by authorizing deposit of one of the security checks. On other occasions Stern would reduce the balance by writing a new check. In some instances the new check was, at decedent’s direction, made payable to a third person, rather than decedent.
The witnesses in the case had testified that all parties agreed on the outstanding balance as of February 10, 1984. By that agreement and by Haim’s ledger sheet, Stern owed $910,000 to decedent at that time. According to Haim’s accounting entries, payments and a return of goods reduced the balance to $60,000 by June, 1984.
In closing argument the personal representative took the $910,000 February 10 balance as the starting point. The personal representative argued that the post-February 10 payments and return of goods should not be counted as credits against the $910,000 balance. The personal representative contended that once the credits were eliminated, the outstanding account balance was equal to, or in excess of, $805,-000 and that the estate was entitled to collect that amount by depositing the checks. The trial court entered judgment for the personal representative.
Stern contends that there is simply no substantial competent evidence supporting the personal representative’s position and the judgment below. After careful review of the record, we agree.
Of the post-February 10 credits, the largest was for the return of a group of gems purchased on February 10 for $450,000. That purchase accounted for almost one-half of the $910,000 February 10 balance. On March 7, one month later, Stern returned that group of gems to the decedent. Accordingly, the ledger sheet reflects a credit of $450,000 for that return.
The personal representative argued below that the March 7 entry simply contained one zero too many and that the correct credit for the return of gems actually was $45,000. There was utterly no basis whatsoever for that argument. The uncontroverted testimony was that the group of emeralds had been purchased on February 10 and returned on March 7. Since the return was for full credit, the $450,000 March 7 credit had to match the $450,000 February 10 purchase. There was not one word of evidence to support the personal representative’s “mathematical error” theory and indeed, all of the evidence is to the contrary.
The personal representative next took the totally incorrect $45,000 amount and, again without any evidentiary basis, combined it with an $80,000 check written from Stern to the decedent one month later. As the sum of those two amounts was $125,-000, the personal representative then hypothesized that this $125,000 was actually intended to be a replacement check for a $125,000 check which had been used as security and was destroyed earlier in the series of transactions. The personal representative further hypothesized that since Stern and decedent had had other business dealings, there must be additional transactions not reflected on the ledger sheet that this $125,000 amount related to, and therefore none of the amounts mentioned so far could be taken as a credit against the $910,-000 balance. There simply was no substantial competent evidence to support these arguments. The personal representative’s *262 other arguments directed at the post-February 10 credits were equally unsupported.[2] See Oceanic Int’l Corp. v. Lantana Boatyard, 402 So.2d 507, 511-12 (Fla. 4th DCA 1981).
We therefore reverse the final judgment and remand with instructions to enter judgment for the personal representative for $60,000, with such allowances for interest as may be appropriate.

. Equally unavailing is the personal representative’s argument that the business record was inadmissible because Haim was not an employee of Stern. A business record does not cease to be such because it is prepared by an independent contractor or other person acting on behalf of the business in question.
The personal representative has abandoned here, but argued below, that the ledger should be excluded because Haim had no personal knowledge regarding the underlying emerald transactions, apart from the information he was given in order to enable him to prepare the business record. The argument below was misplaced. In many enterprises, persons performing bookkeeping or accounting functions will not have participated in the entity’s business transactions, but instead will rely on others for the data to be recorded in the entity's financial records.

. The personal representative went on to hypothesize that three $50,000 checks could be matched against a $150,000 previously destroyed check which should be in turn assumed to relate to other business transactions. There is no evidence whatsoever to support this convoluted chain of reasoning.
The personal representative also argued that the court should disregard a check for $100,000 made payable to one Ortiz. Haim testified that he made the check payable to Ortiz at the decedent's request, and so indicated in both the check register and on the ledger sheet. Haim testified that he believed, but was not sure, that Ortiz was the brother-in-law of the decedent. It was uncontroverted that there were other occasions on which a check would be made payable to a third person at the decedent’s request. The personal representative argued that in the absence of definitive evidence about the relationship between Ortiz and the decedent, and evidence showing that the decedent received financial benefit from the payment, the credit of $100,000 must be disallowed. That contention was without merit.